1   Douglas J. Campion, Esq. (SBN: 75381)
    **LAW OFFICES OF DOUGLAS J. CAMPION**
2   409 Camino Del Rio South, Suite 303
    San Diego, CA 92108
3   doug@djcampion.com
    Telephone: (619) 299-2091
4   Facsimile:  (619) 858-0034

5   Attorneys for Plaintiff

**FILED**

OCT - 6 2010

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

6

7            **UNITED STATES DISTRICT COURT**

8            **SOUTHERN DISTRICT OF CALIFORNIA**

9   SHER SPARANO, Derivatively On Behalf of )
    ARENA PHARMACEUTICALS, INC.,      )
10                                     )
                   Plaintiff,    )
11                                     )
12         vs.                            )
13   JACK LIEF, DOMINIC P. BEHAN,      )
    DONALD D. BELCHER, SCOTT H. BICE,   )
14   HARRY F. HIXSON, JR., TINA S. NOVA,    )
    SCOTT M. SCHNEIDER, CHRISTINE A.    )
    WHITE, M.D. and RANDALL F. WOODS,    )
15                                     )
               Defendants,    )
16                                     )
    -and-                              )
17                                     )
    ARENA PHARMACEUTICALS, INC.,       )
18                                     )
19              Nominal Defendant.    )
20                                     )
21 _____ )

Case No.

**'10 CV 2079 BEN**    **WMc**

**SHAREHOLDER DERIVATIVE
COMPLAINT**

**DEMAND FOR JURY TRIAL**

22

23

24

25

26

27

28

## INTRODUCTION

1.       Plaintiff Sher Sparano ( "Plaintiff"), by her attorneys, hereby submits this Shareholder Derivative Complaint (the "Complaint") against certain officers and directors of Arena Pharmaceuticals, Inc. ("Arena" or the "Company"). Plaintiff asserts state law claims for breach of fiduciary duty against the Individual Defendants (as defined in ¶ 23 below).

2.       Plaintiff bases her allegations upon information and belief, except those allegations concerning herself, which are based upon her personal knowledge. Because Plaintiff lacks access to all information and documents on which her claims are based, certain of her allegations are made by necessity upon information and belief. After Plaintiff has had the opportunity to conduct discovery, she will, to the extent necessary and appropriate, amend or seek leave to amend this Complaint. Plaintiff's information and belief is derived from her counsel's investigation, which included counsel's review and analysis of the following: (i) Arena's filings with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, conference call transcripts, public statements, analyst reports, news articles, and other publications by or pertaining to Arena and the Defendants named herein; and (iii) other publicly available documents.

3.       Arena is a clinical-stage biopharmaceutical company focused on discovering, developing and commercializing oral drugs that target G protein-coupled receptors ("GPCRs") in four major therapeutic areas: cardiovascular, central nervous system, inflammatory and metabolic diseases. The Company's principal drug in development is lorcaserin hydrochloride ("Lorcaserin"), an experimental weight loss drug that has completed a pivotal Phase III clinical trial program. In December 2009, Arena submitted a New Drug Application ("NDA") to the Food and Drug Administration ("FDA") regarding Lorcaserin.

4.       A number of securities class action lawsuits have been filed against the Company and certain of its officers and directors alleging Arena issued false and misleading statements about Lorcaserin and its possibility of FDA approval and its potential success in the marketplace. Those lawsuits allege that the price at which the Company's stock was trading during the several year class period was artificially inflated because of the misrepresentations made by and on behalf of the Company. For purposes of this action, Plaintiff alleges the allegations of wrongdoing in those

Verified Shareholder Derivative                    - 1 -
Complaint

1  lawsuits are true.  Those securities lawsuits filed to date in the Southern District of California are as

2  follows:  *Schueneman v. Arena Pharmaceuticals, Inc., et al.*, Case No. 10-CV-1959 L (BLM);

3  *Sutliff v. Arena Pharmaceuticals, Inc., et al.,* Case No. 10-CV-1961 JLS (NLS); *Rubinstein v. Arena*

4  *Pharmaceuticals, Inc., et al.,* Case No. 10-CV-1984 L (NLS); and *Pratt v. Arena Pharmaceuticals,*

5  *Inc., et al.,* Case No. 10-CV-1977 DMS-AJB.

6       5.      Those lawsuits generally allege that the Company, through its Board of Directors and

7  its agents, issued materially false and misleading statements regarding Lorcaserin, claiming the

8  Company continuously hyped Lorcaserin's combination of efficacy, safety and tolerability and its

9  potential for success without disclosing certain health risks associated with the drug.  Those lawsuits

10  allege that as a result of the Company's false statements, Arena's stock traded at artificially inflated

11  prices during their alleged Class Period, December 8, 2008 and September 16, 2010, reaching a high

12  of $7.95 per share on July 30, 2010.

13       6.      Similar to the other securities action complaints, one of the securities action

14  complaints filed, *Pratt v. Arena Pharmaceuticals, Inc.*, Case No. 10-CV-1977 DMS-AJB ("*Pratt*"),

15  alleges: "On September 14, 2010, the FDA issued a briefing document in advance of its advisory

16  panel meeting in which the agency questioned both the safety and efficacy of Lorcaserin.  According

17  to the FDA staff scientist's analysis, Lorcaserin produced minimal weight loss results, barely

18  meeting the agency's threshold for weight loss effectiveness, while at the same time raising certain

19  cardiovascular and cancer safety risks.  Most notably, the briefing document disclosed that the drug

20  was associated with malignant tumors in rats.  Investors were not aware of the results of rat

21  carcinogenicity studies prior to the release of the FDA briefing document."

22       7.      The *Pratt* complaint further alleges that the market price of Arena common stock

23  plummeted upon this news, collapsing $2.72 per share to close at $4.13 per share on September 14,

24  2010 – a one-day decline of 40% on high volume.  And it further alleges, that on September 16,

25  2010, the FDA advisory panel voted 9 to 5 against approval of Lorcaserin, in large part because of

26  the results of the rat carcinogenicity studies and the modest therapeutic benefits associated with

27  Lorcaserin.  On this news, Arena's stock fell another $1.75 per share to close at $1.99 per share on

28  September 17, 2010 – a one-day decline of over 46% on high volume.

Verified Shareholder Derivative                - 2 -
Complaint

8.     The *Pratt* complaint also alleges that the representations made to the public and the marketplace were false and misleading and in violation of the law:

"7.   The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)     Defendants failed to disclose the truth concerning the potential for increased cardiovascular and cancer safety risks association with Lorcaserin, including the results of the rat carcinogenicity studies; and

(b)     Defendants failed to disclose the truth concerning the efficacy of Lorcaserin for weight loss.

8.     As a result of defendants' false statements, Arena's stock traded at inflated levels during the Class Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down nearly 75% from their Class Period high."

9.     The Individual Defendants' failed to ensure adequate procedures were in place to prevent the events set out in detail in the securities lawsuits filed against the Company, including but not limited to making representations made to the public about Locaserin and its possibilities of success.   By failing to have such procedures in place, and failing to have sufficient checks and balances within the Company, as well as failing to live up to their duties as directors of the Company, the Board of Directors has damaged Arena and its shareholders.   Additionally, the Company's goodwill and reputation are materially undermined and tarnished as a direct result of the Individual Defendants' actions.

10.     Plaintiff brings this derivative action to: (i) recover damages against the Individual Defendants for the benefit of the Company; and (ii) require the Company to reform and improve its corporate governance and internal procedures to protect Arena and its shareholders from a repeat of the damaging events described below.

**JURISDICTION AND VENUE**

11.     This court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332, diversity jurisdiction.  This Court also has supplemental jurisdiction over any state law claims

Verified Shareholder Derivative Complaint                    - 3 -

asserted herein pursuant to 28 U.S.C. Section 1367.  Arena maintains its principal executive office at 6166 Nancy Ridge Drive, San Diego, California 92121.   Thus, Arena is a resident and citizen of California and of this judicial district.  Venue is proper in this Court because some or all of the events giving rise to Plaintiff's claims occurred and/or had effect in this judicial district, the Company is located in this judicial district, and many of the Individual Defendants reside in this judicial district.  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

## PARTIES

12.     Plaintiff Sher Sparano is an owner and holder of Arena common stock and was a shareholder of Arena at the time of the transactions of which Plaintiff complains.  Plaintiff first purchased Arena stock in 2007 by purchasing 4,000 shares, and has held some amount of Arena shares continuously since that time, presently owning approximately 3,000 shares. Plaintiff is a citizen of the state of New York.

13.     Nominal Defendant Arena is a corporation organized under the laws of Delaware with its headquarters at 6166 Nancy Ridge Drive, San Diego, California 92121, making it a citizen of California for purposes of diversity.  Arena is a clinical-stage biopharmaceutical company focused on developing and commercializing oral drugs.  Arena has no drugs on the U.S. market. Arena's principal drug in development is Lorcaserin, a weight loss drug to treat obesity.  Arena has submitted a NDA to the FDA regarding Lorcaserin.

14.     Defendant Jack Lief ("Lief") co-founded the Company and at all relevant times has been the Company's President, Chief Executive Officer ("CEO") and Chairman of the Board. Lief is a citizen of La Jolla, California.

15.     Defendant Dominic P. Behan ("Behan") co-founded the Company and at all relevant times has been the Company's Senior Vice President, Chief Scientific Officer and a director.  Behan is a citizen of San Diego, California.

16.     Defendant Donald D. Belcher ("Belcher") at all relevant times has been a director of the Company.  Belcher is a member of the Audit Committee and of the Compensation Committee. Belcher is a citizen of San Diego, California.

Verified Shareholder Derivative Complaint                  - 4 -

17.     Defendant Scott H. Bice ("Bice") at all relevant times has been a director of the Company. Bice is a member of the Compensation Committee and the Corporate Governance and Nominating Committee. Bice is a citizen of Los Angeles, California.

18.     Defendant Harry F. Hixson, Jr. ("Hixson") at all relevant times has been a director of the Company. Hixson is a member of the Compensation Committee. Hixson is a citizen of La Jolla, California.

19.     Defendant Tina S. Nova ("Nova") at all relevant times has been a director of the Company. Nova is a member of the Corporate Governance and Nominating Committee. Nova is a citizen of Rancho Santa Fe, California.

20.     Defendant Phillip M. Schneider ("Schneider") at all relevant times has been a director of the Company. Schneider is a member of the Audit Committee. Schneider is a citizen of Poway, California.

21.     Defendant Christine A. White, M.D. ("White") at all relevant times has been a director of the Company. White is a member of the Audit Committee and of the Corporate Governance and Nominating Committee. White is a citizen of Temecula, California.

22.     Defendant Randall F. Woods ("Woods") at all relevant times has been a director of the Company. Woods is a member of the Compensation Committee and of the Corporate Governance and Nominating Committee. Woods is a citizen of Rancho Santa Fe, California.

23.     The defendants referenced above in ¶¶14-22 are referred to herein as the "Individual Defendants."

24.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Arena's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and

Verified Shareholder Derivative        - 5 -
Complaint

1 │ were being concealed from the public and that the positive representations being made were then

2 │ materially false and misleading.  The Individual Defendants are liable for the false statements

3 │ pleaded herein.

4 │ **DUTIES OF THE INDIVIDUAL DEFENDANTS**

5 │      25.     By reason of their positions as officers, directors and/or fiduciaries of Arena, and

6 │ because of their ability to control the business and corporate affairs of Arena, the Individual

7 │ Defendants owed Arena and its shareholders fiduciary obligations of trust, loyalty, good faith and

8 │ due care, and were and are required to use their utmost ability to control and manage Arena in a

9 │ fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in

10 │ furtherance of the best interests of Arena and its shareholders so as to benefit all shareholders

11 │ equally and not in furtherance of their personal interest or benefit.

12 │      26.     Each director and officer of the Company owes to Arena and its shareholders the

13 │ fiduciary duty to exercise good faith and diligence in the administration of the affairs of the

14 │ Company and in the use and preservation of its property and assets, and the highest obligations of

15 │ fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual

16 │ Defendants had a duty to maintain sufficient and proper internal accounting controls and to

17 │ promptly disseminate accurate and truthful information with regard to the Company's revenue,

18 │ margins, operations, performance, management, projections and forecasts so that the market price

19 │ of the Company's stock would be based on truthful and accurate information.

20 │      27.     To discharge their duties, the officers and directors of Arena were required to

21 │ exercise reasonable and prudent supervision over the management, policies, practices and controls

22 │ of the financial affairs of the Company.  By virtue of such duties, the officers and directors of

23 │ Arena were required to, among other things:

24 │           a)   ensure that the Company implements and maintains effective internal accounting

25 │              and internal control policies and procedures to prevent any reportable and material

26 │              weaknesses with the Company's financial reporting;

27 │

28 │

Verified Shareholder Derivative                    - 6 -
Complaint

b) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

c) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

d) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

e) supervise the preparation and filing of any audits, reports, or other information required by law of the Company, and examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company, and make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth herein;

f) remain informed as to how Arena conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

g) ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

28.     The conduct of the Individual Defendants complained of herein involves a violation of their obligations as directors and officers of Arena, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders, which the Individual Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

Verified Shareholder Derivative          - 7 -
Complaint

29.     The Individual Defendants breached their duties of loyalty and good faith by allowing, or by themselves causing, the Company to misrepresent its financial results and prospects, as detailed herein, and by failing to prevent the Company from taking such illegal actions.

30.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Arena, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Arena, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

31.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least 2008, and continuing thereafter. During this time, the Individual Defendants caused the Company to misrepresent and /or conceal the true facts as alleged herein.

32.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Arena common stock so the Individual Defendants could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

33.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently fail to maintain effective accounting and internal control policies and procedures. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

Verified Shareholder Derivative                    - 8 -
Complaint

34.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.  At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Arena, and was at all times acting within the course and scope of such agency.

## FACTUAL ALLEGATIONS

## BACKGROUND

35.     Arena is a clinical-stage biopharmaceutical company focused on discovering, developing and commercializing oral drugs that target GPCRs in four major therapeutic areas: cardiovascular, central nervous system, inflammatory and metabolic diseases.  The Company's advanced drug candidate, Lorcaserin, has completed a pivotal Phase III clinical trial program.  In December 2009, Arena submitted an NDA for Lorcaserin, its experimental weight loss drug, for regulatory approval.

36.     Numerous drug companies are racing to obtain approval for their weight loss drugs because, in part, there is a dearth of "diet drugs" on the market.  The FDA has not approved a prescription weight loss drug in more than a decade.  One problem associated with the development and FDA approval of weight loss drugs is and has been the adverse safety profiles of diet drugs.  Notably, several years ago, the diet drug known as Fen-phen was pulled from the market because of an adverse safety profile concerning potential damage to heart valves in patients taking the drug.  Ever since then, the market and the FDA have been very concerned with the safety profiles of weight loss drugs proposed for FDA approval.  As recently as July 2010, the weight loss drug Qnexa, submitted for FDA approval by Vivus Inc., did not receive FDA panel approval due to safety concerns.

37.     Arena's weight loss drug, Lorcaserin, had been studied in animals, including in rat carcinogenicity studies, which defendants admittedly knew were being conducted.  The results of

Verified Shareholder Derivative Complaint                              - 9 -

the rat carcinogenicity studies became known to defendants before they conducted the Phase III clinical trials. The results of the rat carcinogenicity studies included carcinogenicity signals in the form of mammary tumors.

**THE SECURITIES LAWSUITS ALLEGE THAT THE COMPANY MADE FALSE AND MISLEADING STATEMENTS DURING THE CLASS PERIOD**

38. The securities lawsuits referenced above that have been filed against the Company and certain of its directors allege that the Company and certain of its employees and agents engaged in misrepresentations about Locaserin's potential throughout the Class Period and by failing to reveal the truth about Lorcaserin's test results when they first learned of it. As similarly alleged in the other securities actions filed, the *Pratt* complaint alleges in paragraphs 32 to 62:

"32. On December 8, 2008, Arena issued a press release announcing the publication of the results of its Phase IIb clinical trial results of Lorcaserin in the official peer reviewed journal of *The Obesity Society*. Defendants discussed the results of the study and the nature of adverse events. Defendant Lief stated:

"The data highlighted in this publication demonstrate lorcaserin's potential to become the first in a new class of weight management agents, thereby addressing an urgent need for new approaches to the obesity epidemic . . . . We are confident the three ongoing lorcaserin Phase 3 trials will build on the clinical data published today, and we eagerly anticipate the announcement of our first Phase 3 data from the BLOOM trial around the end of March 2009. We expect the top-line BLOOM data will be followed by a peer reviewed presentation of the data at a conference later in the year, the announcement of BLOSSOM data in the Fall, and the submission of our New Drug Application to the FDA by the end of 2009."

33. Upon this news, Arena's stock closed up $0.24 per share to close at $3.84 per share on December 8, 2008. By the end of December 2008, Arena's stock closed at $4.17 per share.

34. On March 12, 2009, Arena issued a press release announcing its fourth quarter and year end 2008 results. Defendant Lief reported on Lorcaserin in the press release, stating: "'We are excited that in only a few weeks we will be announcing top-line data from the first of two pivotal trials evaluating the safety and efficacy of lorcaserin, which has the potential to be the first in a new class of drugs selectively targeting a well validated weight loss receptor . . . .'"

35.     On March 30, 2009, Arena issued a press release announcing positive results from its Phase III BLOOM trial for Lorcaserin. Defendants discussed the results of the study and the nature of adverse events.

36.     On May 11, 2009, Arena issued a press release announcing its first quarter 2009 results. Defendant Lief reported on Lorcaserin in the press release, stating: "'Receiving the positive lorcaserin BLOOM results was a significant milestone for Arena, and we are focusing our financial, management and development resources on completing the lorcaserin BLOSSOM trial on schedule and submitting our New Drug Application for lorcaserin by the end of the year . . . .'"

37.     On June 17, 2009, Arena announced it had entered into a $100 million credit facility with Deerfield Management ("Deerfield"), a healthcare investment organization and one of the Company's largest stockholders.

38.     On July 8, 2009, Arena engaged in a public offering of 12.5 million shares of its common stock at a purchase price of $4.17 per share. Arena received $52.1 million in gross proceeds from the offering.

39.     On August 3, 2009, Arena issued a press release announcing its second quarter 2009 results. Defendant Lief reported on Lorcaserin in the press release, stating: "'We are on track to announce results from the BLOSSOM trial in September, which we expect will be the final piece of lorcaserin's NDA that we plan to submit by the end of this year . . . . Based on its emerging efficacy, safety and tolerability profile, lorcaserin has the potential to be an important new treatment option for patients needing to better manage their weight and improve their overall health. Our improved financial position strengthens our ability to obtain marketing approval for lorcaserin and our position in partnership discussions.'"

40.     On September 18, 2009, Arena issued a press release announcing positive results from its Phase III BLOSSOM trial for Lorcaserin. Defendants discussed the results of the study and the nature and rate of adverse events. Defendant Lief stated:

> "History has taught us that the marriage of efficacy and safety is of critical importance in treating patients. Neither is sufficient without the other. With its

excellent safety and tolerability profile, we expect lorcaserin to change the way primary care doctors treat the broad cross-section of overweight and obese patients with pharmacotherapy . . . . With the completion of our robust Phase 3 pivotal program, we will focus on the NDA filing, work with the FDA during the review process and prepare for the commercialization of lorcaserin."

41.     On October 25, 2009, Arena issued a press release announcing additional positive results from its BLOOM trial for Lorcaserin. Defendants discussed the results of the study and the nature and rate of adverse events.

42.     On October 27, 2009, Arena issued a press release announcing additional positive results from its BLOSSOM trial for Lorcaserin. Defendants discussed the results of the study and the nature and rate of adverse events.

43.     On November 9, 2009, Arena issued a press release announcing its third quarter 2009 results. Defendant Lief reported on Lorcaserin in the press release, stating: "'The successful completion of the lorcaserin pivotal program in the third quarter was a critical milestone for Arena . . . . If approved, the unique combination of efficacy, safety and tolerability positions lorcaserin as first-line therapy.'"

44.     On December 10, 2009, Arena issued a press release announcing additional published data and additional positive results from its BLOSSOM trial for Lorcaserin. Defendants discussed the results of the study and the nature and rate of adverse events.

45.     On December 22, 2009, Arena submitted its NDA for Lorcaserin based on a data package that included 18 clinical trials totaling 8,576 patients. The pivotal Phase III clinical trial programs, BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management) and BLOSSOM (Behavioral modification and Lorcaserin Second Study for Obesity Management), evaluated nearly 7,200 patients who were treated for up to two years.

46.     On this news, Arena's stock closed up $0.10 per share on December 22, 2009, to close at $3.84 per share. Thereafter, Arena's stock continued to trade in the $3.00-$4.00 per share range for the next six months.

Verified Shareholder Derivative          - 12 -
Complaint

47.     On February 26, 2010, Arena issued a press release announcing that the FDA had assigned a date of October 22, 2010 to review the NDA for Lorcaserin. The press release falsely and misleadingly stated: "In both [BLOOM and BLOSSOM] trials, lorcaserin produced statistically significant weight loss with excellent safety and tolerability."

48.     On March 12, 2010, Arena issued a press release announcing its 2009 results. Defendant Lief reported on Lorcaserin in the press release, stating: "'We are pleased with the timely execution and significant progress made in our lorcaserin program . . . . [W]e are building a strong foundation for a successful launch upon potential approval.'"  The press release reiterated the false and misleading statement made in the February 26, 2010 press release, stating: "In both [BLOOM and BLOSSOM] trials, lorcaserin produced statistically significant weight loss with excellent safety and tolerability."

49.     On May 7, 2010, Arena issued a press release announcing its first quarter 2010 results. Defendant Lief reported on Lorcaserin in the press release, stating: "'We believe that lorcaserin represents a significant medical and commercial opportunity based on the drug candidate's unique combination of safety, efficacy and tolerability in our pivotal trial program.'"  The press release contained the further false and misleading statement that "[i]n both [BLOOM and BLOSSOM] trials, lorcaserin produced highly statistically significant weight loss with excellent safety and tolerability."

50.     On July 1, 2010, Arena issued a press release announcing that the Company had entered into a marketing and supply agreement with Eisai Inc. ("Eisai") related to Lorcaserin.  Pursuant to the agreement, Eisai would have exclusive rights to market and distribute the drug in the United States following the approval of Lorcaserin by the FDA. Arena would manufacture Lorcaserin and sell the drug to Eisai for marketing and distribution in the United States.  In addition, per the agreement, Arena would receive an upfront payment of $50 million and the Company would further be entitled to received up to an additional $90 million in milestone payments after Lorcaserin received FDA approval.

51.     Upon this news, Arena's stock began to climb.  It closed up $0.56, or 16%, to close at $3.56 per share on July 1, 2010.

Verified Shareholder Derivative             - 13 -
Complaint

52.     On July 14, 2010, Arena issued a press release announcing the publication of the results of the two-year BLOOM study in the *New England Journal of Medicine*. Defendants discussed the results of the study and the nature and rate of adverse events. Defendants failed to include in their discussion of the safety profile of Lorcaserin the adverse results from the rat carcinogenicity studies.

53.     On July 15, 2010, it was announced that the FDA had denied approval for the weight loss drug Qnexa, submitted for approval by Arena's competitor Vivus Inc., due to safety concerns.

54.     Upon this news, Arena's stock closed up $0.74, or 18%, to close at $4.66 per share on July 16, 2010. Thereafter, Arena's stock continued to trend upwards, reaching its Class Period high of $7.95 per share on July 30, 2010.

55.     On August 3, 2010, Arena issued a press release announcing its second quarter 2010 results. Defendant Lief reported on the upcoming date for the FDA advisory panel meeting for Lorcaserin and reported on results from the Lorcaserin studies, providing data on the benefits of Lorcaserin. Defendants failed to include in their discussion of Lorcaserin the adverse results from the rat carcinogenicity studies.

56.     On August 6, 2010, Arena issued a press release confirming the September 16, 2010 date of the FDA Advisory Committee meeting. Defendant Lief stated: "'We . . . look forward to reviewing lorcaserin's profile with the panel members,'" and reiterated the prior false and misleading statement that "[i]n both [BLOOM and BLOSSOM] trials, lorcaserin was well tolerated and produced statistically significant weight loss."

57.     Further on August 6, 2010, Arena announced that it had entered into an agreement with Deerfield to sell to Deerfield a total of 8,955,224 shares of its common stock at a price of $6.70 per share in a registered direct public offering. Arena received $60 million in gross proceeds from the offering. Arena further announced that it had also amended its pre-existing credit facility with Deerfield in connection with the offering.

Verified Shareholder Derivative Complaint                    - 14 -

58. On September 14, 2010, the FDA issued a briefing document in advance of its advisory panel meeting in which the agency questioned both the safety and efficacy of Lorcaserin. According to the FDA staff scientist's analysis, Lorcaserin produced minimal weight loss results, barely meeting the agency's threshold for weight loss effectiveness, while at the same time raising certain cardiovascular and cancer safety risks. Most notably, the briefing document disclosed that the drug was associated with malignant tumors in rats. Investors were not aware of the results of the rat carcinogenicity studies prior to the release of the FDA briefing document.

59. The market price of Arena common stock plummeted upon this news, collapsing $2.72 per share to close at $4.13 per share on September 14, 2010 – a one-day decline of 40% on high volume.

60. On September 16, 2010, the FDA advisory panel voted 9 to 5 against approval of Lorcaserin, in large part because of the results of the rat carcinogenicity studies and the modest therapeutic benefits associated with Lorcaserin.

61. In a conference call with analysts on September 17, 2010, certain defendants admitted that they were aware of these results but decided not to disclose them to the public because they did not believe they were material.

62. Arena's stock fell another $1.75 per share to close at $1.99 per share on September 17, 2010 – a one-day decline of over 46% on high volume."

37. As with the other securities actions, the *Pratt* complaint further alleges Defendants herein concealed the truth and caused the damages to the shareholders, in paragraphs 63 to 64:

"63. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a) Defendants failed to disclose the truth concerning the potential for increased cardiovascular and cancer safety risks association with Lorcaserin, including the results of the rat carcinogenicity studies; and

(b) Defendants failed to disclose the truth concerning the efficacy of Lorcaserin for weight loss.

Verified Shareholder Derivative Complaint                                  - 15 -

64.   As a result of defendants' false statements, Arena stock traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 75% from their Class Period high."

38.   As with the other securities actions filed, the *Pratt* complaint further alleges and summarizes its claims against the Company and certain of its directors in paragraphs 65 to 71:

"65. By misrepresenting, *inter alia,* the Company's prospects for its experimental new drug Lorcaserin, the defendants presented a misleading picture of Arena's business and prospects. Thus, instead of truthfully disclosing during the Class Period that Lorcaserin raised certain safety concerns, including the risk of cancer, and only provided a modest weight loss benefit, defendants constantly assured investors that Lorcaserin was safe and effective.

66.   These claims caused and maintained the artificial inflation in Arena's stock price throughout the Class Period and until the truth was revealed to the market.

67.   On September 14, 2010, the FDA issued a briefing document questioning the efficacy and safety of Lorcaserin, causing Arena's stock to collapse 40% from $6.85 per share to $4.13 per share in one day.

68.   On September 16, 2010, the FDA advisory panel voted against approving Lorcaserin, finding that the benefits of the drug did not outweigh the risks associated with the drug, causing Arena's stock price to collapse another 46% from $3.74 per share to $1.99 per share in one day.

69.   As a direct result of defendants' admissions and the public revelations regarding the truth about Arena's actual business prospects going forward, Arena's stock price fell 75% from its Class Period high, from $7.95 per share on July 30, 2010 to close at $1.99 per share on September 17, 2010. This drop removed the inflation from Arena's stock price, causing real economic loss to investors who had purchased the stock during the Class Period.

70.   Arena's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

Verified Shareholder Derivative                           - 16 -
Complaint

71. The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Arena who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made."

## DAMAGES TO THE COMPANY

39. As a result of the Individual Defendants' improprieties, Arena failed to maintain proper internal controls and procedures. The Company is facing a number of lawsuits alleging violations of the federal securities laws.

40. Arena may also have to re-state its previously filed financial earnings after its auditors complete their investigations, which will no doubt cause Arena's stock price to drop even further. As a direct and proximate result of the Individual Defendants' actions as alleged above, Arena's market capitalization has been substantially damaged.

41. Further, as a direct and proximate result of Individual Defendants' actions, Arena has expended and will continue to expend significant sums of money that it otherwise would not have had to. Such expenditures include, but are not limited to:

a) Costs incurred in investigating and defending Arena and certain officers in the securities class actions, plus potentially millions of dollars in settlements or adverse judgment;

b) Costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on Arena's artificially-inflated stock price and inflated revenues; and

c) Costs incurred from the loss of the Company's customers' confidence in Arena's services.

Verified Shareholder Derivative Complaint                         - 17 -

1    42.   As a result of the Individual Defendants' misconduct, Arena's corporate

2  image and goodwill have been irreparably damaged.  Arena's Board has misled the investing

3  public, such that Arena's ability to raise equity capital or debt on favorable terms in the future

4  is now impaired.

5                    **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

6    43.   Plaintiff brings this action derivatively in the right and for the benefit of

7  Arena to redress injuries suffered, and to be suffered, by Arena as a direct result of the breaches

8  of fiduciary duty, as well as the aiding and abetting thereof, and unjust enrichment by the

9  Individual Defendants.  Arena is named as a nominal defendant solely in a derivative capacity.

10  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise

11  have.

12    44.  Plaintiff will adequately and fairly represent the interests of Arena in enforcing and

13  prosecuting its rights.

14    45.  Plaintiff has continuously held the stock of Arena during all times relevant to the

15  Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder

16  of the Company.

17    46.  Arena's three committees consist of only independent directors, i.e., non-employee

18  directors. Arena claims that such composition leads to better oversight but in fact the lack of

19  proper oversight and intervention by the committees led to the present situation wherein the

20  Company finds itself sued for violating the securities laws.

21    47.   The current Board of Arena consists of the following nine individuals: defendants

22  Lief, Behan, Belcher, Bice, Hixson, Nova, Schneider, White, and Woods.   Plaintiff has not

23  made any demand on the present Board of Arena to institute this action because such a demand

24  would be a futile, wasteful and useless act.  Demand is futile for a combination of the following

25  reasons, as set forth in paragraphs 48 through 58.

26    48.   Defendant Lief is co-founder, President, Chairman of the Board and Chief

27  Executive Officer of the Company.   The principal professional occupation of Lief is his

28  employment with Arena, pursuant to which he received and continues to receive substantial

Verified Shareholder Derivative                     - 18 -
Complaint

1   monetary compensation and other benefits.  In fact, over the past 3 years, Arena has paid Lief

2   the following compensation: 2007:  $2,435,491; 2008: $1,645,475; 2009:  $1,563,992.  Lief

3   was given 300,000 shares of stock by the Company as a "Performance – Based" award in 2007.

4   As of March 10, 2010, Lief owned 1,369,357 shares of the Company, or 1.34%, including

5   shares that could be purchased through stock options within 60 days. Given his personal ties to

6   the Company, as well as his significant compensation, Lief is not capable of fairly considering

7   a demand that he initiate this lawsuit against himself or his fellow directors.

8        49.    Further, as Chairman, President, and CEO, Lief is ultimately responsible for

9   ensuring that Arena maintains effective controls and complies with state and federal laws and

10  regulations.    As discussed above, Lief breached these duties and, thus, is not capable of fairly

11  considering a litigation demand.

12       50.   In addition, Lief signed the Certification for the Company's SEC Form 10-K for

13  the fiscal year ended December 31, 2009.  Thus, Lief faces a substantial threat of liability

14  should it be determined that the information contained therein is unreliable.

15       51.  Defendant Behan is co-founder, director, Senior Vice President and Chief

16  Scientific Officer of the Company. The principal professional occupation of Behan is his

17  employment with Arena, pursuant to which he received and continues to receive substantial

18  monetary compensation and other benefits.   In fact, over the past 3 years, Arena has paid

19  Behan the following compensation: 2007: $995,213; 2008: $748,187; 2009: $715,327.  Behan

20  was given 100,000 shares of stock by the Company as a "Performance – Based" award in 2007.

21  As of March 10, 2010, Behan owned 761,948 shares of the Company, including shares that

22  could be purchased through stock options within 60 days. Given his personal ties to the

23  Company, as well as his significant compensation, Behan is not capable of fairly considering a

24  demand that he initiate this lawsuit against himself or his fellow directors.

25       52.  Defendant Belcher has been a member of the Board of Directors since 2003.  He is

26  a member of the Audit Committee and the Chair of the Compensation Committee.  The Audit

27  Committee is responsible for ensuring that Arena complies with all laws and regulations that

28  have a material impact on the Company's financial statements.  The failure to disclose the truth

Verified Shareholder Derivative          - 19 -
Complaint

1    about Locaserin will have a material impact on the Company's financial statements.  As such,

2    Belcher  faces a substantial threat of liability such that he cannot fairly consider a litigation

3    demand.   As of March 10, 2010, Behan owned 194,100 shares of the Company, including

4    shares that could be purchased through stock options within 60 days. As an outside director of

5    the Company, he is paid a minimum of $20,000 per year, in cash or stock options, to be on the

6    Board, and additional cash payments of $500 to $3,000 for each board or committee meeting

7    attended.

8           53.   Defendant Bice has been a member of the Board of Directors since 2003.  Bice is a

9    member of the Compensation Committee and the Corporate Governance and Nominating

10   Committee.  The Corporate Governance Committee is charged with providing accurate

11   information to the Board on a timely basis and to periodically review and assess the

12   performance of the Board and each of its committees, as well as reviewing the independence of

13   any director.  The failure to disclose the truth about Locaserin establishes the Corporate

14   Governance Committee has not adequately performed its duties.   As such, Bice  faces a

15   substantial threat of liability such that he cannot fairly consider a litigation demand.   As of

16   March 10, 2010, Bice owned 95,667 shares of the Company, including shares that could be

17   purchased through stock options within 60 days. As an outside director of the Company, he is

18   paid a minimum of $20,000 per year, in cash or stock options, to be on the Board, and

19   additional cash payments of $500 to $3,000 for each board or committee meeting attended.

20          54.   Defendant Hixson has been a member of the Board of Directors since 2004.

21   Hixson  is a member of the Corporate Governance and Nominating Committee. The Corporate

22   Governance Committee is charged with providing accurate information to the Board on a

23   timely basis and to periodically review and assess the performance of the Board and each of its

24   committees, as well as reviewing the independence of any director.  The failure to disclose the

25   truth about Locaserin establishes the Corporate Governance Committee has not adequately

26   performed its duties.   As such, Hixson faces a substantial threat of liability such that he cannot

27   fairly consider a litigation demand.   As of March 10, 2010, Hixson owned 234,110 shares of

28   the Company, including shares that could be purchased through stock options within 60 days.

Verified Shareholder Derivative                    - 20 -
Complaint

1   As an outside director of the Company, he is paid a minimum of $20,000 per year, in cash or

2   stock options, to be on the Board, and additional cash payments of $500 to $3,000 for each

3   board or committee meeting attended.

4       55. Defendant Nova been a member of the Board of Directors since 2004.  Nova is a

5   member of the Corporate Governance and Nominating Committee.  The Corporate Governance

6   Committee is charged with providing accurate information to the Board on a timely basis and

7   to periodically review and assess the performance of the Board and each of its committees, as

8   well as reviewing the independence of any director.  The failure to disclose the truth about

9   Locaserin establishes the Corporate Governance Committee has not adequately performed its

10  duties.   As such, Nova faces a substantial threat of liability such that she cannot fairly consider

11  a litigation demand.  As of March 10, 2010, Nova owned 83,000 shares of the Company,

12  including shares that could be purchased through stock options within 60 days. As an outside

13  director of the Company, he is paid a minimum of $20,000 per year, in cash or stock options, to

14  be on the Board, and additional cash payments of $500 to $3,000 for each board or committee

15  meeting attended.

16      56. Defendant Schneider has been a member of the Board of Directors since 2007.

17  Schneider is the Chair of the Audit Committee.  The Audit Committee is responsible for

18  ensuring that Arena complies with all laws and regulations that have a material impact on the

19  Company's financial statements.  The failure to disclose the truth about Locaserin will have a

20  material impact on the Company's financial statements.  As such, Schneider faces a substantial

21  threat of liability such that he cannot fairly consider a litigation demand.   As of March 10,

22  2010, Schneider owned 69,624 shares of the Company, including shares that could be

23  purchased through stock options within 60 days. As an outside director of the Company, he is

24  paid a minimum of $20,000 per year, in cash or stock options, to be on the Board, and

25  additional cash payments of $500 to $3,000 for each board or committee meeting attended.

26      57. **Defendant White** has been a member of the Board of Directors since 2006.  She has

27  been since November 2008 the "lead independent director" and as such, has worked closely with

28  Lief, the Chairman of the Board and the President and CEO.  White is or was a member of the Audit

Verified Shareholder Derivative            - 21 -
Complaint

1  Committee and the Chair of the Corporate Governance and Nominating Committee.  The Audit

2  Committee is responsible for ensuring that Arena complies with all laws and regulations that have a

3  material impact on the Company's financial statements.  The failure to disclose the truth about

4  Locaserin will have a material impact on the Company's financial statements. As such, White faces

5  a substantial threat of liability such that she cannot fairly consider a litigation demand.    The

6  Corporate Governance Committee is charged with providing accurate information to the Board on a

7  timely basis and to periodically review and assess the performance of the Board and each of its

8  committees, as well as reviewing the independence of any director.  The failure to disclose the truth

9  about Locaserin establishes the Corporate Governance Committee has not adequately performed its

10  duties.   As such, White faces a substantial threat of liability such that he cannot fairly consider a

11  litigation demand. As of March 10, 2010, White owned 114,068 shares of the Company, including

12  shares that could be purchased through stock options within 60 days. As an outside director of the

13  Company, she is paid a minimum of $20,000 per year, in cash or stock options, to be on the Board,

14  and additional cash payments of $500 to $3,000 for each board or committee meeting attended.

15          58. **Defendant Woods** has been a member of the Board of Directors since 2007.  Woods

16  is a member of the Corporate Governance and Nominating Committee and the Compensation

17  Committee. The Corporate Governance Committee is charged with providing accurate information

18  to the Board on a timely basis and to periodically review and assess the performance of the Board

19  and each of its committees, as well as reviewing the independence of any director.  The failure to

20  disclose the truth about Locaserin establishes the Corporate Governance Committee has not

21  adequately performed its duties.  As such, Woods faces a substantial threat of liability such that he

22  cannot fairly consider a litigation demand.   As of March 10, 2010, Woods owned 60,624 shares of

23  the Company, including shares that could be purchased through stock options within 60 days. As an

24  outside director of the Company, he is paid a minimum of $20,000 per year, in cash or stock options,

25  to be on the Board, and additional cash payments of $500 to $3,000 for each board or committee

26  meeting attended.

27                              **FIRST CAUSE OF ACTION**

28  **Against All Individual Defendants for Breach of Fiduciary Duty (Misrepresentations)**

Verified Shareholder Derivative                    - 22 -
Complaint

59. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60. The Individual Defendants owed and owe Arena fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Arena the highest obligation of good faith, fair dealing, loyalty and due care.

61. The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

62. Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to make only truthful, complete and honest representations to the marketplace. These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

63. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Arena has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

64. Additionally, by their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Arena in a manner consistent with the operations of a publicly held corporation.

65. As a direct and proximate result of the Individual Defendants' mismanagement and breaches of duty alleged herein, Arena has sustained significant damages in excess of the jurisdiction of this Court. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

66. Plaintiff on behalf of Arena has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.      Against all the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary

1 | duties and unjust enrichment;

2 |       B.     Directing Arena to take all necessary actions to reform and improve its corporate

3 | governance and internal procedures to comply with applicable laws and to protect Arena and its

4 | shareholders from a reoccurrence of the damaging events described herein, including, but not limited

5 | to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or

6 | Articles of Incorporation and taking such other action as may be necessary to place before

7 | shareholders for a vote the following Corporate Governance Policies:

8 |           1.    a proposal to strengthen the Board's supervision of operations and develop

9 | and implement procedures for greater shareholder input into the policies and guidelines of the Board;

10 |           2.    a provision to permit the shareholders of Arena to nominate at least three

11 | candidates for election to the Board;

12 |           3.    a proposal to ensure the accuracy of the qualifications of Arena's directors,

13 | executives and other employees;

14 |           4.    a proposal to strengthen the Company's procedures for the receipt, retention

15 | and treatment of complaints received by the Company regarding accounting, internal controls and

16 | auditing matters; and

17 |           5.    appropriately test and then strengthen the internal audit and control functions.

18 |       C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and state

19 | statutory provisions sued hereunder so as to assure that Plaintiff on behalf of Arena has an effective

20 | remedy;

21 |       D.     Awarding to Arena restitution from the defendants, and each of them, and ordering

22 | disgorgement of all profits, benefits and other compensation obtained by the defendants;

23 |       E.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable

24 | attorneys' fees, accountants' and experts' fees, costs, and expenses; and

25 |

26 |

27 |

28 |

Verified Shareholder Derivative
Complaint

- 24 -

F.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on matters triable by jury.


Dated:   October 6, 2010            **LAW OFFICES OF DOUGLAS J. CAMPION**


Douglas J. Campion

Verified Shareholder Derivative              - 25 -
Complaint

1

2

3

4                          **VERIFICATION**

5        I, Douglas J. Campion, hereby declare as follows:

6        1.  I am the owner of the Law Offices of Douglas J. Campion, counsel for

7   Plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents

8   thereof.   I am informed and believe the matters therein are true and on that ground allege that the

9   matters stated therein are true.

10       2.  I make this Verification because Plaintiff is absent from the County of San Diego

11  where I maintain my office.

12       Executed this 6th day of October, 2010 at San Diego, California under the laws of the

13  United States.

14

15                                        Douglas J. Campion

16

17

18

19

20

21

22

23

24

25

26

27

28

Verified Shareholder Derivative                - 28 -
Complaint

≈JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Sher Sparano, Derivatively on Behalf of Arena Pharmaceuticals, Inc. | Jack Lief, Dominic P. Behan, Donald D. Belcher, Scott H. Bice, Harry F. Hixson, Jr., Tina S. Nova, Scott M. Schneider, |

**(b)** County of Residence of First Listed Plaintiff   **New York**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **San Diego**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Law Offices of Douglas J. Campion, 409 Camino Del Rio South, Suite 303, San Diego, CA 92010  (619)299-2091

Attorneys (If Known)

'10 CV 2079 BEN   WMc

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332

Brief description of cause:
Derivative case against board of directors for wrongdoing.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE   Lorenz

DOCKET NUMBER   10CV1959 L (BLM)

DATE
10/06/2010

SIGNATURE OF ATTORNEY OF RECORD
*Douglas J. Campion*

**FOR OFFICE USE ONLY**

RECEIPT #  18799   AMOUNT  $350   APPLYING IFP   JUDGE   MAG. JUDGE

CR

TAB 10-06-10

```
DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS018799
Cashier ID: mbain
Transaction Date: 10/06/2010
Payer Name: LAW OFFICE OF DOUGLAS CAMPION
-----------------------------------
CIVIL FILING FEE
  For: SHER SPARANO V LIEF
  Case/Party: D-CAS-3-10-CV-002079-001
  Amount:        $350.00
-----------------------------------
CHECK
  Check/Money Order Num: 4248
  Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:      $0.00


There will be a fee of $45.00
charged for any returned check.
```